IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

DR. FREDERICK POLITE,

    Plaintiff,

v.      1:05-CV-174 (WLS)

DOUGHERTY COUNTY SCHOOL SYSTEM, et. al.,

    Defendants.

**ORDER**

Before the Court is Defendants' Motion for Summary Judgment (Doc. 28). For the following reasons, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED**.

**DISCUSSION**

**I. Summary Judgment Standard**

Under Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); *see also* Allen v. Tyson Foods, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See* Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999); Celotex Corp. v. Catrett, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material

1

fact. Celotex Corp. v. Catrett, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. Celotex Corp. v. Catrett, 477 U.S. at 322-23; Allen v. Tyson Foods, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II. Factual Summary

It is uncontested by the parties that Defendant Sally Whatley is and has been the Superintendent of Defendant Dougherty County School System ("DCSS") since 2001. (Docs. 28, 59). Defendant DCCS has a policy that requires that it not discriminate in its personnel practices because of gender or race.[1] (Doc. 28; *see also* Doc. 55, Exh. 44). Plaintiff

---

[1] Plaintiff disputes Defendants' assertion that Defendant DCSS maintains a personnel policy of non-discrimination on the basis of race and gender, directing the Court's attention to a statement made by Defendant Whatley in her deposition that a certain policy did not apply to the positions of principal and assistant principal. (Doc. 59)(citing Doc. 50, pp. 42-44). Upon review of the statement cited by Plaintiff, the Court finds that the policy that Defendant Whatley stated did not apply to the positions of principal and assistant principal is Policy GBD on Professional Personnel Hiring, which was referred to in deposition by Plaintiff's counsel as Exhibit 45, and not Policy GAAA on Employment of Certified Personnel, which was referred to in deposition by Plaintiff's counsel as Exhibit 44. (*See* Doc. 50, pp. 42-44).

Upon further review of the cited portion of Defendant Whatley's deposition, it is found both that

2

acknowledged in deposition that Defendant Whatley is the only employee of the Dougherty County School System whom he contends has unfairly discriminated against Plaintiff on the basis of his race and gender in violation of the law.[2] (Doc. 28; *see also* Doc. 29, p. 65). It is further uncontested that Defendant Whatley, as an appointee of the elected school board, has the responsibility to recommend to the Board persons to be appointed to be principal and assistant principal at the 26 Dougherty County Schools.[3] (Doc. 28, Exh. 1).

Defendants state that as of January 2, 2006, during Defendant Whatley's tenure, she has recommended and the Board had appointed 45 of the 57 principals and assistant principals then serving. Of these 45, she had recommended 23 males and 22 females. All were appointed. Of the 57 principals and assistant principals then serving, 17 were African-American males (30%); 11 were white males (20%); 23 were African-American females (40%) and 6 were white females (10%). Of the 21 principals recommended by Defendant Whatley, 2 were white males, 1 was a white female, 5 were African American males and 13 were African American females. Of the 12 African-American Assistant Principals serving, 11 were recommended by Defendant Whatley.[4]

---

Policy GAAA appears to constitute an Equal Employment policy and that Defendant Whatley made no statements in her deposition that suggest that Policy GAAA does not apply to the positions of principal and assistant principal. It is therefore found that there is no genuine issue of material fact respecting the existence of Defendant DCCS' Equal Employment Policy.

[2] Plaintiff's assertions that "several principals offered him positions," that at least "one principal denied under oath that he did not recommend Plaintiff for a position," and that "[D]efendants contended that Baker transferred Plaintiff" do not contradict Defendant's statement respecting acknowledgments Plaintiff made in deposition such that it may be found that Plaintiff's assertion constitutes a genuine dispute as to the fact that Plaintiff acknowledged in his deposition that Defendant Whatley is the only person he contends unlawfully discriminated against him. (*See* Doc. 59, Exh. 3).

[3] Similarly, Plaintiff's assertions regarding policies of Defendant DCSS, statements made to the EEOC suggesting that Plaintiff was not hired as principal because no committee had recommended Plaintiff to her, and statements made in an August 16, 2004 letter that no principal had recommended Plaintiff to her, do not address, let alone dispute, Defendants' factual statement that Defendant Whatley was charged with the responsibility of recommending persons to the Board for appointment to principal and assistant principal positions. (*See* Doc. 59, Exh. 3).

[4] In his Response to Defendants' Statement of Facts, Plaintiff does not actually deny these statements, but rather attempts to argue the weight the Court should afford such statements. (*See* Doc. 59, Exh. 3). "Statements in the form of issues or legal conclusions (rather than material

3

(Doc. 28, Exh. 1). Defendant Whatley relies entirely on a school selection committee and school principals to recommend to her their choices for assistant principal. *Id*.

Defendants maintain both: 1) that during Defendant Whatley's tenure, she has never failed to forward such a recommendation without her own favorable recommendation; and 2) that Plaintiff was never duly recommended to Dr. Whatley by a school selection committee or by a principal for appointment to any position he sought. (Doc. 28). There is no genuine dispute as to the validity of Defendants' first assertion. While Plaintiff submits the deposition of Dr. Valerie Overstreet-Thomas as an attempt to dispute Defendant's second assertion, a review of the same supports a finding that Dr. Overstreet-Thomas was an assistant principal, without the power to unilaterally recommend candidates, at the time she allegedly recommended Plaintiff to Defendant Whatley.[5] (Doc. 59, Exh. 3). Furthermore, by her own testimony, Dr. Overstreet-Thomas made the recommendation at issue outside the purview of the school selection committee upon which she served. *Id*. It is therefore found that there is no genuine issue as to Defendant's assertion that Plaintiff was never duly recommended to Defendant Whatley by a school selection committee or by a principal for appointment.

Defendants further maintain that the appointees to the positions sought by Plaintiff were

---

facts) will not be considered by the court." M.D.Ga. R. 56.

[5] Plaintiff maintains that "[t]his statement is contradicted by the testimony of Plaintiff, Seaborn Jackson, Dr. Raymond Polite, and Dr. Valerie Overstreet Thomas." (Doc. 59, Exh. 3). Upon review of the cited portions of Plaintiff's affidavit, (Doc. 59, Exh. 7), the Court finds that Plaintiff's statements in his affidavit (Doc. 59, Exh. 7) regarding information told him by Mr. Jackson, Dr. Polite, and Dr. Overstreet-Thomas constitute hearsay that does not fall within a recognized exception, and is therefore inadmissible. *See* Fed. R. Evid. 801(c); *see also* Fed. R. Evid. 802-805. Additionally, the affidavit of Seaborn Jackson, (Doc. 61), in which he purports to recount a conversation that allegedly took place between he and Billy Brown during which Plaintiff's alleged recommendation and subsequent rejection was discussed, consists entirely of inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802-805. Similarly, the affidavit of Jennifer Polite, (Doc. 59, Exh. 6), in which she purports to recount a conversation that allegedly occurred between she and Johnny Scott and Ellen Lane regarding communications between Scott, Lane, and Defendant Whatley, consists entirely of inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802-805. However, the cited portions of the deposition of Dr. Valerie Overstreet-Thomas, (Doc. 47, pp. 31-32), in which the deponent recounts alleged communications she had with Defendant Whatley regarding whether she had offered Plaintiff an assistant principal position, is not hearsay and is therefore admissible. *Contra* Fed. R. Evid. 602, 801(c).

4

qualified for the appointment as was Plaintiff.[6] (Doc. 28).    Additionally, Defendant Whatley asserts that she has never made any statement to Plaintiff that she doesn't like blacks and males. *Id*.  Defendants further assert that no person has ever reported to Plaintiff that Defendant Whatley has ever stated that she doesn't like blacks and males.[7] *Id*.

According to Defendants, Dr. Shumate, an African-American female, then the assistant principal at Northside, was the first choice of the school committee for the principal position at Northside.   Dr. Shumate was appointed principal of Northside.  Ms. Baker, an African-American female, then an assistant principal, was the first choice of the school committee for the principal position at Albany Middle School.   Ms. Baker was subsequently appointed principal at Albany Middle.  Ms. Jackson, an African-American female, then an assistant principal at Lake Park, was the first choice of the school committee.   Ms. Jackson, who was offered the recommendation of Defendant Whatley to become principal of Lake Park, declined in order to accept another position.   Ms. Whitfield, a white female, was the second choice of the committee.   Ms. Whitfield was subsequently recommended and appointed.    Mr. Scott, principal of Southside recommended an African-American female to be his assistant principal. She was appointed.  Dr. Thomas, an African-American female, was principal at Lamar Reese.   She recommended to Defendant Whatley an African-American male to be her assistant principal and also his successor. [8]

---

[6] Plaintiff does not deny this statement, but rather argues that "[t]he evidence in the record shows that Plaintiff was more qualified for the positions than the applicants actually chosen." "Statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court." M.D.Ga. R. 56.

[7] Plaintiff's unsupported assertions that he believes that Defendant Whatley does not like black males is conclusory, and are inadmissible. (Doc. 59, Exh. 3)(citing Doc. 29, pp. 54, 58). In turn, Defendants' statement that "Plaintiff's 'belief' that he is the victim of discrimination is based on second hand hearsay" is a legal conclusion, which is inadmissible as a statement of fact. (Doc. 28 at no. 13); *see supra* n. 4, 6.

[8] Plaintiff relies upon admitted speculation and hearsay on the part of Jennifer Polite as basis for the denial of the asserted facts.  As found earlier, such speculation and hearsay is not admissible under the Federal Rules of Civil Procedure.  Indeed, a witness, unless qualified as an expert, may testify only on those matters which she has personal knowledge. Fed. R. Evid. 602. Plaintiff asserts no

5

According to Defendants, Plaintiff stated in his deposition that he was getting along well with the principal, Ms. Baker, after his August 2004 lateral transfer from Albany Middle School to Dougherty Middle School. They further maintain that Plaintiff was comfortable teaching math and science at Dougherty Middle, that the pay was the same, that he was needed, and that he got along well with his new principal. (Doc. 28). Plaintiff asserts that he was transferred in violation of Defendants' transfer policy. (Doc. 59, Exh. 3). At some point after July 2003, Plaintiff met with Defendant Whatley. (Doc. 59). Plaintiff alleges, and Defendants disagree, that he complained of discrimination in this meeting. *Id.* While it is uncontested that Plaintiff resigned as a teacher in January of 2005, Defendants maintain, and Plaintiff contests that Plaintiff was encouraged by Mr. Keith to continue as an educator. (Doc. 28, 59, Exh. 3). Plaintiff has not continued a career in education. *Id.*

### III. Analysis[9]

Plaintiff, an African-American male, alleges that: 1) he was not promoted by Defendant DCSS to any of the principal and assistant principal positions he sought in 2003 and 2004; and 2) he was laterally transferred in retaliation in August 2004 to teach at Dougherty Middle School rather than at Albany Middle School because of his race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, and 42 U.S.C. § 1981, brought pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also alleges that Defendants violated Plaintiff's rights to freedom of speech and of association, as guaranteed by the First Amendment to the United

---

facts which may be found to contradict Defendants' assertions regarding these recommendations.

[9] As noted in the Court's March 16, 2007 order, the Court would "implicitly, if not explicitly, rule upon the objections [to Defendant Whatley's affidavit] in consideration of the motion" for summary judgment. (*See* Doc. 68). The Court finds that while Plaintiff contends that Defendant Whatley's affidavit (Doc. 28, Exh. 1) "contains inadmissible evidence, it is self-serving, and it is conclusory," aside from his own conclusion, he does not show how Defendant's affidavit, or any statements contained therein, are "hearsay," "selfserving, speculative, conclusory," or "contradict evidence already in the evidence." (*See* Doc. 60). At best he attempts to argue the weight the Court should afford such statements. *Id.* It is not the Court's role to weigh such evidence upon consideration of a motion for summary judgment. Accordingly, Plaintiff's objections to Defendant Whatley's affidavit (Doc. 60) are **OVERRULED**.

6

States Constitution and the Georgia Constitution. *Id*. Plaintiff further maintains multiple ancillary Georgia law claims which are derivative of his primary claim of race- and gender-based discrimination. *Id*.

### A. Title VII Claims

### 1. Title VII Claims against Defendant Whatley

Title VII does not provide for suits against persons in their individual capacities. Cross v. State of Alabama, 49 F.3d 1490 (11th Cir. 1995) (citing Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991)); *see also* Reynolds v. Glynn County Bd. of Educ., 968 F.Supp. 696, 701 (S.D. Ga. 1996). "[B]ecause individual capacity suits are unavailable under Title VII, plaintiffs must sue the employer, but may do so by naming supervisory employees as agents of the employer or by naming the employer directly." Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1084 (11th Cir. 1996) (citing Busby, 931 F.2d at 772); *compare infra* Part III, B, 1. Said differently, "under Title VII, [allegedly] discriminatory personnel actions taken by an employer's agent only create liability for the employer-entity, and not for the agents themselves." Gibson v. Hickman, 2 F. Supp. 2d 1481, 1483 (M.D. Ga. 1998) (citing Busby, 931 F.2d at 772). As Plaintiff named Defendant DCCS as a defendant in his Title VII suit, there remains no justification to permit litigation of the same claims against Defendant Whatley. Accordingly, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to all of Plaintiff's Title VII claims against Defendant Whatley.

### 2. Title VII Discriminatory Failure to Hire and Promote Claims

There are three ways in which a plaintiff can establish a prima facie case of discrimination under Title VII: "by presenting direct evidence of discriminatory intent; by meeting the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or by demonstrating through statistics a pattern of discrimination." Early v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). "'Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or

7

presumption.'" Early, 907 at 1081 (alterations in original)(citations omitted). An example of direct evidence would be a memo from management that said, "'Fire Early – he is too old.'" *Id*.

In this case, there is no direct evidence of discriminatory intent and Plaintiff does not seek to prove his case by statistical evidence. Therefore, Plaintiff must prove his case by satisfying the inferential test as set forth in McDonnell Douglas. To establish a prima facie case of hiring discrimination, a plaintiff must prove: "1) that he or she belongs to a protected [class], (2) that he or she applied for and was qualified for a job for which the employer was seeking applicants, (3) that, despite these qualifications, he or she was rejected, and (4) that, after the rejection, the employer continued to seek applications from persons with similar qualifications." Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 n.6 (11th Cir. 1983) (citing McDonnell Douglas, 411 U.S. at 802). Alternately, "[t]o establish a prima facie case of discrimination in promotion, a plaintiff must prove: 1) he or she is a member of a protected [class]; 2) was qualified for and applied for the promotion; 3) was rejected despite these qualifications; and 4) other equally or less qualified employees who were not members of the protected [class] were promoted." Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 n.7 (11th Cir. 1983)(citing Crawford v. Western Electric Co., Inc, 614 F.2d 1300, 1315 (5th Cir.1980)); *see also* Bonner v. City of Pritchard, 661 F.2d 1206 (adopting as precedent for the Eleventh Circuit all decisions of the former Fifth Circuit as that court existed on September 30, 1981). If, respecting either claim, Plaintiff establishes a prima facie case, the burden then shifts to Defendants to put forth a legitimate, nondiscriminatory reason for Defendant Whatley's actions. Perryman, 698 F.2d at 1142 (citing McDonnell Douglas, 411 U.S. at 802). The burden then shifts to Plaintiff to show that the articulated reason was merely a pretext for discrimination. *Id*.

Here it is undisputed that Plaintiff is a member of a race-based protected class and that he was qualified for the jobs at issue. However, Plaintiff has not established that he actually applied for the jobs in question, i.e., that he was recommended for a position pursuant to the hiring or promotions process in place. Under the particular personnel policies and practices in place

8

during the events in question, application for an principal or assistant principal position required the recommendation to Defendant Whatley of either a school selection committee or a principal. Here, Plaintiff has shown neither that he was recommended to Defendant Whatley for any of the jobs he sought by a school selection committee or a principal nor that Defendants accepted recommendations outside of the aforementioned process such that his putative recommendation via Dr. Overstreet-Thomas, an assistant principal acting outside of her capacity as a school committee member, could be found to constitute a recommendation under Board policies. Plaintiff therefore fails under both tests to establish a prima facie case for discriminatory failure to hire or promote under Title VII. Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Plaintiff's Title VII discriminatory failure to hire and promote claims.

### 3. Title VII Discriminatory Hostile Work Environment Claim

To establish a prima facie case for hostile work environment under Title VII, a plaintiff must establish: "1) that [he] belongs to a protected group; 2) that [he] has been subject to unwelcome harassment; 3) that the harassment [was] based on a protected characteristic of the employee . . .; 4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Hooks v. Bank of Am., 183 Fed. Appx. 833, 836 (11th Cir. 2006) (citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). Aside from establishing that he belongs to a protected group, Plaintiff does not establish any of the factors necessary to make out a prima facie case for hostile work environment under Title VII. Instead, in response to Defendants' allegation that Plaintiff fails to establish such a claim, Plaintiff conclusorily remarks that "[i]In the case at bar, the record is covered with examples of how Plaintiff was subjected to a hostile work environment." (*See* Doc. 59). To be clear, Plaintiff does not direct the Court to any evidence which could support such a finding, but rather remarks in a footnote that "[t]he evidence in this record, when construed in Plaintiff's favor, leave no doubt but that Whatley has

9

refused on several occasions to accept the recommendation of Plaintiff for a position." *Id*. Failure to recommend, even if shown, without more, is not harassment. Plaintiff's unsupported, generalized conclusion is simply insufficient to support a finding that he has met **his burden of showing** through the evidence presented that he has a prima facie case for hostile work environment. Accordingly, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Plaintiff's Title VII hostile work environment claims.

### 4. Title VII Retaliation Claim

To establish a prima facie case of retaliation, Plaintiff must show that: 1) he engaged in activity protected by Title VII; 2) Defendant DCSS took adverse employment action against him; and 3) a causal connection exists between that protected activity and the adverse employment action. Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). "The burden of going forward then shifts to the defending party to articulate some legitimate, non-discriminatory reason for the employee's rejection or discharge. Whatley v. Metropolitan Atlanta Rapid Transit Authority, 632 F.2d 1325, 1328 (5th Cir.1980)(quotations and internal citations omitted).

"[A] plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Techs., 103 F.3d 956, 960 (11th Cir. 1999) (citing Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989)). When viewed in the light most favorable to Plaintiff, the evidence in this case, most specifically Plaintiff's affidavit, raises a genuine dispute of material fact as to whether he actually complained of discrimination while employed by Defendant DCSS and whether he had a good faith, reasonable belief for doing so. (*See* Docs. 28, 59, Exh. 7). However, Plaintiff does not demonstrate the existence of any evidence which could support a finding that the August 2004 lateral transfer from Albany Middle to Dougherty Middle either disadvantaged him *per se* or compromised his ability to obtain a principal or assistant principal position. In fact, the evidence even when viewed in the light most favorable to Plaintiff, supports a finding that Plaintiff was

not disadvantaged by the transfer as his job duties and pay were the same at both schools and he was comfortable in his position at Dougherty Middle. (*See* Doc. 29). Plaintiff therefore fails to establish the requisite adverse employment action for a prima facie case of Title VII retaliation.

Assuming *arguendo* that the evidence could support such a finding, Plaintiff fails to establish a causal connection between the alleged discrimination complaint and any adverse action on the part of Defendant DCSS. Specifically, Plaintiff does not show either that Defendant DCSS was aware of the alleged protected conduct, *i.e.*, his alleged verbal complaint(s) to Defendant Whatley, or that said complaint and the alleged adverse action were not wholly unrelated. *See* Gupta, 212 F.3d at 590. Plaintiff essentially only asserts that he complained to Defendant Whatley and that thereafter he was transferred. He presents no facts establishing a causal connection between the two events and as stated heretofore, does not show the second fact to be adverse. Plaintiff therefore fails to establish a prima facie case for Title VII retaliation. Accordingly, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to this claim.

**B.     Section 1983 Claims**

**1.     Section 1983 Claims against Defendant DCSS**

"Section 1983 liability cannot be imposed upon governmental entities under a theory of *respondeat superior*." Reynolds, 968 F.Supp. at 704 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 694 (1978)). A governmental entity is liable under Section 1983 only where Plaintiff demonstrates: 1) that his constitutional rights were violated; 2) that Defendant DCSS maintained a custom or policy that constituted deliberate indifference to that constitutional right; and 3) that application of the policy or custom caused the alleged violation. *See* Monell, 436 U.S. at 690-91. As the Reynolds court noted, "[p]olicies are not limited to formal guidelines or practices that have been reduced to writing. A widespread practice may be so permanent and well settled as to constitute a custom." Reynolds, 968 F.Supp. at 704 (quoting St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)(internal quotations omitted). In Georgia, school personnel may be

employed only upon recommendation of the superintendent, in this case Defendant Whatley, and subsequent approval by the school board. Reynolds, 968 F.Supp. at 704 (citing O.C.G.A. § 20-2-211). While it is true that "[w]hen the Board approves a hiring recommendation, it acts as the official policy maker for the school district," for purposes of Section 1983 analysis, it is the policies and customs of the Board itself, and not those of Defendant Whatley, that are relevant. *Id*.; *see also* Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1084 (11th Cir. 1996) (citing Busby, 931 F.2d at 776)(where a superintendent's actions were found not to be attributable to the board of education for purposes of Section 1983 analysis); *compare supra* Part III, A, 1.

Here, unlike in Reynolds, Plaintiff has not set forth sufficient admissible evidence which could support a finding that the Board maintains hiring or promotion policies that discriminate on the basis of race or gender. *Compare* Reynolds, 968 F.Supp. at 704. The only evidence of hiring policies presently before the Court is one that, among other things, expressly prohibits race- or gender-based employment discrimination. *See supra* Part II. Furthermore, Plaintiff has not set forth sufficient admissible evidence to show a "persistent and widespread practice" of race- or gender-based discrimination such that a custom of discriminatory employment practices may be inferred. *Compare* Reynolds, 968 F.Supp. at 705. In fact, the evidence shows quite the contrary. *See supra* Part II, pp. 3-4. Assuming *arguendo* that Plaintiff can show that his constitutional rights were violated, he does not show that Defendant DCSS maintained either policy or custom that when applied caused the alleged violations. Furthermore, Plaintiff does not demonstrate that Defendant DCCS maintains a policy or custom that when applied caused retaliation in violation of Plaintiff's First Amendment rights to freedom of speech and freedom to petition. Therefore, any claims against this Defendant brought pursuant to Section 1983 are improperly asserted based on a theory of *respondeat superior* for the alleged actions of Defendant Whatley. For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 28) should be, and is, **GRANTED** as to all of Plaintiff's claims brought against Defendant DCSS pursuant to 42 U.S.C. § 1983.

### 2. Section 1983 Claims against Defendant Whatley in her Official Capacity

Plaintiff's Section 1983 claims against Defendant Whatley in her official capacity are indistinguishable from his Section 1983 claims against Defendant DCSS. *See, e.g.*, Gibson, 2 F.Supp. at 1482-83. The Court having granted Defendants' Motion for Summary Judgment (Doc. 28) as to Plaintiff's Section 1983 claims against Defendant DCSS, finds that Defendant's Motion (Doc. 28) should be, and is **GRANTED** as to Plaintiff's Section 1983 claims against Defendant Whatley in her official capacity.[10]

### 3. Section 1983 Claims for Discriminatory Failure to Hire and/or Promote and for Discriminatory Hostile Work Environment against Defendant Whatley in her Individual Capacity[11]

Although the Supreme Court does not regard as identical the constraints of Title VII and the Federal Constitution, when Section 1983 is used as a parallel remedy for violation . . . of Title VII, the elements of the two causes of action are the same." Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005). In this case, Plaintiff's Title VII claims for discriminatory failure to hire and/or to promote and for hostile work environment due to race- and/or gender-based discrimination proceed from the Equal Protection Clause of the Fourteenth Amendment, as do Plaintiff's Section 1983 parallel claims. Accordingly, Plaintiff's parallel Fourteenth Amendment claims brought via Section 1983 claims are reviewed under the same standards as Plaintiff's Title VII claims. Therefore, for reasons stated earlier in reviewing Plaintiff's Title VII claims, Defendants' Motion for Summary Judgment (Doc. 28) is

---

[10] While further analysis of Plaintiff's claims against Defendant Whatley in her official capacity is not necessary to resolve the same, the Court finds it prudent to note that Plaintiff does not proffer any admissible evidence which could support a finding that this Defendant engaged in any discriminatory acts against him. *See supra* Part II.

[11] Generally, officials charged in a personal capacity under Section 1983 may assert the affirmative defense of qualified immunity. *See, e.g.*, Kubany v. School Bd., 839 F. Supp. 1544, 1547 (M.D. Fla. 1993). However, "[a]s an affirmative defense, qualified immunity must be pleaded by a government official." *Id*. (citing Gomez v. Toledo, 446 U.S. 635 (1980)). Here, Defendant Whatley did not so plead. Accordingly, questions of Defendant Whatley's qualified immunity, to the extent it may exist, are not before the Court.

**GRANTED** as to Plaintiff's Section 1983 hostile work environment claims, *see supra* Part III, A, 3; and **GRANTED** as to Plaintiff's Section 1983 discriminatory failure to hire and failure to promote claims, *see supra* Part III, A, 2.

### 4. Section 1983 Retaliation Claims

Unlike the aforementioned claims, Plaintiff's Title VII and Section 1983 retaliation claims derive from separate sources, and cannot be analyzed concurrently. *See* Ratliff v. DeKalb County, 62 F.3d 338, 340 (11th Cir. 1995) ("[t]he right to be free from retaliation is clearly established as a *first amendment right* and as a *statutory right* under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation...a constitutional claim for retaliation may be brought under 42 U.S.C.§ 1983 pursuant to the first amendment).

#### i. Fourteenth Amendment Retaliation Claim

Plaintiff appears to assert a retaliation claim based on the Equal Protection Clause of the Fourteenth Amendment. (Docs. 1, 59). As stated above, the right to be free from retaliation proceeds constitutionally from the First Amendment and statutorily from Title VII, and not from the Fourteenth Amendment. Defendants' Motion for Summary Judgment (Doc. 28) is therefore **GRANTED** as to Plaintiff's Fourteenth Amendment retaliation claims brought via Section 1983.

#### ii. First Amendment Retaliation Claim

To maintain a case for retaliation in violation of the First Amendment rights to freedom of speech and freedom to petition, a public employee plaintiff must first establish that the speech at issue "may be 'fairly characterized as constituting speech [or petition] on a matter of public concern.'" Grigley v. City of Atlanta, 136 F.3d 752, 753-56 (11th Cir. 1998) (quoting Rankin v. McPherson, 483 U.S. 378, 384(1987)). Even upon construction in the light most favorable to Plaintiff, it cannot be found that the content, form, or context of any of Plaintiff's purported acts of speech constitute speech on a matter of public concern. Similarly, it cannot be found that Plaintiff's purported acts of petition constitute petition on a matter of public concern.

14

Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Plaintiff's First Amendment retaliation claim brought pursuant to Section 1983.[12]

### C. Georgia Law Claims[13]

### 1. Sovereign Immunity

Defendant DCSS, as a school district, is a political subdivision of the State of Georgia and is vested with sovereign immunity until such immunity is waived. *See, e.g.*, Davis ex rel. Doe v. DeKalb County Sch. Dist., 996 F. Supp. 1478, 1484 (N.D. Ga. 1998) (citing Wellborn v. DeKalb County School Dist., 227 Ga. App. 377, 379-80 (1997); Coffee County School Dist. v. Snipes, 216 Ga. App. 293, 293-94 (1995)). "The Georgia Tort Claims Act, ("GTCA"), O.C.G.A. § 50-21-20, *et. seq.*, provides for a limited waiver of the state's sovereign immunity for the torts of its officers and employees, but it expressly excludes school districts from the waiver." Davis ex rel. Doe, 996 F.Supp. at 1484. Plaintiff has failed to show the existence of any act waiving Defendant DCSS' sovereign immunity. *See id.* Defendant DCSS, therefore is immune from suit of Plaintiff's state law claims. Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Plaintiff's state law tort claims against Defendant DCSS.

---

[12] Plaintiff has neither submitted any evidence in this case nor, save the brief mention in his Complaint, otherwise asserted a retaliation claim for violation of his First Amendment right to freedom of association. Accordingly, said claim, to the extent it exists, appears to have been abandoned. Defendants' Motion for Summary Judgment (Doc. 28) is therefore **GRANTED** as to Plaintiff's First Amendment retaliation claim for violation of his First Amendment right to freedom of association.

[13] In his response brief to Defendants' Motion, Plaintiff appears to argue the merits of a claim for tortious interference with employment relationship. (*See* Doc. 59). Such a claim does not appear in the Complaint and, presumably therefore, was not addressed by Defendants in their Motion for Summary Judgment. (*See* Docs. 1, 28). As Plaintiff never stated a claim for tortious interference with employment relationship, the Court finds that to permit Plaintiff to assert the same in response to Defendants' Motion for Summary Judgment would be improper and would effect unfair prejudice on Defendants. Accordingly, Plaintiff's purported claim for tortious interference with employment relationship is **DISMISSED** to the extent it is now being asserted for the first time without proper amendment.

### 2. Official Immunity

The GTCA also constitutes the exclusive remedy for any tort committed by a state officer or employee. O.C.G.A. § 50-21-25(a). A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment enjoys official immunity and is not subject to lawsuit or liability therefor, even when a plaintiff alleges a state constitutional violation. *Id*., *see also* Davis v. Standifer, 275 Ga. App. 769, 771 (2005). Defendant Whatley, as an employee of Defendant DCSS, is therefore immune from suit of Plaintiff's state law claims. Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Plaintiff's state law tort claims against Defendant Whatley**.**

### 3. Breach of Contract Claim

There is no cognizable claim for constructive wrongful termination in Georgia. *See, e.g.*, Jellico v. Effingham County, 221 Ga.App. 252, 471 S.E.2d 36 (1996). Furthermore, there is no genuine dispute as to the material fact that Plaintiff voluntarily resigned. As Defendants properly note, under Georgia law a voluntary resignation bars a claim for termination of the employment relationship, even if the resignation is under pressure and even if the employer would have terminated the employment in the absence of a resignation. Clark v. Chick-Fil-A, Inc., 214, Ga. App. 758 (1994); Precise v. City of Rossville, 261 Ga. 210 (1991). Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Plaintiff's claim for breach of contract.

### **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED**.

**SO ORDERED,** this   2nd   day of August, 2007.

    /s/W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**